arguing for the appellant is an Izzy arguing for the appellee is john Barrett. Each side will have 10 minutes for their argument. The appellant also have five minutes for rebuttal. Please note only the clerk of the court is permitted to record these proceedings today. Morning council. Good morning. Good morning, Your Honor. Appellant. If you are ready to proceed, you may do so. Thank you, Your Honor. May it please the court. My name is Annie Izzy from the office of the appellate defender on behalf of the appellant, Mr. Terrence Bragg. Mr. Bragg was convicted by a jury of unlawful possession with intent to deliver three to 15 grams of a controlled substance containing a heroin and fentanyl mixture. The jury also found a sentencing enhancement that the substance contained fentanyl, which added three years to Mr. Bragg's overall sentence, resulting in a sentence of 14 years on appeal. Mr Bragg raises two issues. The first is that the fentanyl enhancement was not proven beyond a reasonable doubt because the state did not prove that Mr Bragg knew the substance he possessed contained fentanyl. The second issue is that a series of sentencing errors deprived Mr Bragg of a fair sentencing hearing. In this argument, I plan to focus on issue one, but I am also prepared to answer questions as to issue two as well. For a brief factual overview, Mr Bragg was living at his cousin's house when parole officers performed an in person visit on him, um, and found suspected narcotics near Mr Bragg while he was sleeping in a back bedroom. Those tested positive for heroin and fentanyl compound, and then he was charged with this offense, including the three year fentanyl enhancement. That fentanyl enhancement allegation was submitted to the jury. However, that allegation did not specify a mens rea, specifically that Mr Bragg knew that there was fentanyl in the substance that he possessed. There has only been one case that has touched on this issue of the of whether there is a mental state requirement for the fentanyl enhancement. Um, that is the case of people of the graves. Um, however, that case is not precedential because it is out of the first district appellate court and it's unpublished. It's also not persuasive authority on this issue because in that case, the first district appellate court merely cited to other types of sentencing enhancements that were absolute liability, um, versus doing performing its own statutory interpretation analysis of this fentanyl enhancement. Um, and they did not explain how those other enhancements being absolute liability, um, are applicable to this enhancement being absolute liability. So the question is, is this fentanyl enhancement absolute liability or is there a required men's rea before we touch on that council? What about the argument that the state makes that this is invited error as a result of failure to object to the jury instructions? Yes, Your Honor. Um, I would respond that it is not invited error. It can be reviewed under a plain error analysis. A first pronged plain error analysis. The cases cited by the state are distinguishable. I think they said it to, um, Carter and Patrick. In those cases, it was the defendant who either proffered the instruction that that defendant was now appealing or saying was erroneous. Um, or the or the defendant, um, unequivocally opposed the instruction. So it is that it is not invited unless the defendant either proffers the instruction himself or takes an active role in having that instruction, um, come about. One of the cases cited, um, is the case of people, the Villa Real. And in that, um, the Illinois Supreme Court said active participation in the direction of how the proceedings are going, um, is what invites the air. A mere non objection, um, can still can still be reviewed under a plain error analysis. Additionally, it's the it's the state's burden to prove beyond a reasonable doubt. Thank you. Yes.  Um, when we perform a statutory construction analysis on this fentanyl enhancement, um, it shows that absolute liability was not intended. When determining whether a statute is an absolute liability offense and doesn't require a mens rea, courts look to to three different aspects. And one is the plain statutory language in light of legislative history. One is the severity of the potential penalty, and one is a reading of the statute in the context of related provisions. All three of those in relation to this fentanyl enhancement way in favor of this not being absolute liability but requiring a mens rea. The legislative history. Um, when this enhancement was enacted, it was in addition to two other fentanyl related provisions that increased those penalties. And the discussions by the Legislature show that they were aimed at deterring drug dealers who were acting as chemists, um, by by cutting the fentanyl into substances themselves. Um, it was also deterring drug dealers who are, uh, who are announcing their substances as giving the ultimate high. Um, the Legislature's choice to say those words and aim at those at deterring those drug dealers shows that they intend to deter drug dealers who know what they're selling. The severity of the penalty, this penalty being three years, is significant and weighs against this being absolute liability because courts have said that the higher the penalty, the least likely that it is that the Legislature intended absolute liability and three years is severe. When comparing this enhancement to related provisions, we see that this is a controlled substance offense and it is a possessory offense, and normally knowledge is required for both of those types of offenses. For controlled substance offenses, the state has to prove that the defendant knew that what they had was a controlled substance, even if they don't know the exact substance that it is. Um, if there are two controlled substances, the state has to prove that that defendant knows that they are selling two controlled substances. Uh, for instance, in the case of people, the coacher, um, um, a defendant was charged with selling heroin and cocaine when they were contained within one substance. It was a compound, and the appellate court ended up reversing one of the counts because the state didn't prove that the defendant knew that she was selling two substances within that one mixture. They could only prove that she knew that she was selling one. Although the manner of for that is different than this enhancement. Um, I believe the analysis is similar of punishing a defendant for selling something that they are not aware of. Um, therefore, the state had to prove that Mr Bragg also knew that fentanyl was in the substance in addition to heroin, or at least know that a second controlled substance was mixed in there in comparison to the location based enhancements, um, that the state is arguing, um, that this enhancement is similar to and should therefore not also require a men's area. Those location based enhancements are distinguishable from this fentanyl enhancement. Um, and therefore we should not rely on that same analysis. Um, those enhancements are distinguishable in a number of ways. One is their different statutory placement. They're contained within a separate section. This fentanyl enhancement is included in the same section as the base offense that it enhances. Secondly, there are different legislative histories, different vulnerable populations. It is focused on the potential victims. Um, here the fentanyl enhancement is aimed at deterring drug dealers. Um, isn't there an argument to be made that it was also that the fentanyl enhancement is also to protect vulnerable victims as well? I think that the difference is who their aim was to deter drug dealers. And in the location based enhancements, the aim was to protect those, those particular locations. So yes, the aim is to reduce harm to society. That is the goal of, of I believe many controlled substance offenses. Um, but still their goal was to limit fentanyl being included in the substances. Additionally, that the prohibited conduct is different as well. It is much more difficult for, um, a defendant who possesses fentanyl unknowingly, like to find out that fentanyl is in there. Whereas a location based enhancement, a defendant can look around and easily find out if he is in an area, um, of that prohibited con conduct. Um, therefore, um, the state did not prove that the allegation beyond a reasonable doubt because they did not prove that Mr. Bragg knew that he possessed fentanyl and did not present evidence, um, wherein a jury could have found that he knew, um, it was not readily apparent that it was that fentanyl was in there. In fact, you hear in body work and camera officer skyline saying this is obviously hero heroin. Um, there was no pure fentanyl found in the search of the house showing that maybe Mr Bragg was the one who could have caught the fentanyl. No fentanyl was found. Um, and he was found sleeping in his bed. He was not found selling anything at that time or advertising anything at that time. Mhm. And based on that, um, I'd be asking the court to vacate the enhancement since it was not proven beyond a reasonable doubt, and it would not have been even if properly submitted to the jury because there was not enough evidence. Justice Schiller. Any further questions? No further questions. Justice Long. No other questions. Thank you. Thank you. Council. You may be granted rebuttal. I believe if you are ready to proceed, you may do so. Thank you, Your Honors. Uh, good morning and may it please the court. John Barrett arguing on behalf of the people of state of Illinois Council. Um, I'd like to focus rather than just kind of reiterating much of what was discussed in the briefs. Kind of just let's focus here on section for one of the statute and how that works. Let's look at the plain language of the ignores that none of the subsections in Section 401 contained mental states. Yet courts have never required separate proof that defendants knew specific weights or quantities of the narcotics they were selling. As an example, subsection A1C increases penalties when a person possesses 400 grams or more, but less than 900 grams of a substance containing heroin. Similarly, subsection C3 increases penalties for possessing 10 grams or more, but less than 15 grams of any substance containing morphine. Again, without requiring proof the defendant knew the exact weight of the morphine. So the fact that this fennel enhancement, the fentanyl enhancement appears within these subsections. Alongside these other penalty provisions, rather than a being read as not requiring proof of an additional mental state. That's not how any of these provisions work or how they've how they've ever been interpreted by the courts. An important case that people discussed in their brief, people V Castro holds that the sale of narcotics constitutes an intentional affirmative act, which by its very nature creates a reasonable inference that the seller knows the nature of the narcotics he's selling. This statute reflects those principles. So when you look at the statutory scheme with weights, you don't have to separately prove, well, the defendant, we have to separately prove the defendant knew that it was above 400 grams. No, there's a base offense that we prove knowing possession of the substance. And all of these other aspects that are contained in the penalty provisions like weight, like the presence of fentanyl, those are all things that are imputed to the seller. And in this case, during a check-in at defendant's residence, the parole officers discovered defendant with evidence of the drug sales in his room. There were 14 packets of heroin and fentanyl, two digital scales, several open boxes of sandwich bags, approximately $1,400 in cash. And the forensic lab tests confirmed the weight, which it class one felony above three grams, in excess of three grams, and the heroin also contained fentanyl. So that fentanyl is an enhancement, a penalty enhancement, just like the weight increases the sentence of the defendant. And to say that, well, because in Brooks and Pacheco, which are relied on the Graves case, because those are location-based, that there's just no application here. Well, these cases all are focused on public safety, and clearly there's a public safety issue at play here. Fentanyl is on the streets, we want to get it off the streets. The legislature's discussions regarding that were not focused on simply the mental state of people mixing it. Their focus was on getting it off the streets, period, and protecting anyone, including people who are unknowingly using it, by purchasing it and not being aware. So there's a much larger purpose behind including that enhancement in these penalty provisions, and that's to protect the public, to the streets, and to treat it like the epidemic that it is. The legislature confirms that in the debates, they're talking about the alarming increase of deaths, drug-related deaths. I mean, overdoses simply related to heroin alone are alarming, but now mixing fentanyl in with that, I mean, it's like pouring gasoline on a fire, and the legislative history is very focused on public safety, which is consistent with the Graves case. And then defense counsels comment that the Graves case provided no analysis. If you look at what the case does here, it's a short analysis, it's to the point. Paragraph 34 says, to the extent defendant argues the state had to prove beyond a reasonable doubt that he knew the substance contained fentanyl, specifically an enhancement was based upon the presence of fentanyl, which the state proved and applied regardless of defendant's knowledge of its presence. That is a concise and accurate statement of the plain language of this statute. There is no additional mental state requirement for that enhancing factor. And then the two cases that are cited, they're in parentheses. The analysis is the specific applicable points that are contained in those parentheses. So that is a targeted synthesis there. The state was not required to prove under Brooks that the defendant knew the offense of delivery of a controlled substance was committed within 1,000 feet of property owned by a public housing agency. The proximity of the property was an enhancing factor and not an element of the offense. That right there is directly applicable to this case in that the fentanyl is an enhancing factor. It's not an element of the offense. So turning to Koger, the state relied... Let me stop you there. What about Appellant's argument, though, that there has not been in graves an analysis, a statutory analysis of the application? I mean, what about this idea that it's just briefly mentioned? Is that necessary? Is an analysis necessary there? It's not because the plain language of the statute and the fact that there is no mens rea requirement for an enhancing element is straightforward. I mean, this is how penalty provisions work. It speaks for itself. It's sort of, you know, there's no mental state requirement, the end. And that's an accurate, concise way of addressing this. And I would encourage your honors to address it in the same manner, to recognize that this is a sentencing enhancement. It's not a strict liability offense. This is like a defendant being convicted of possessing heroin and above 400 grams. We don't have defense counsel in here saying, well, we should have argued that the defendant knew that he possessed 400 grams or more. Well, it's treated more seriously and it seriously aggravates the offense to have that amount of weight. But that's not how this works. The fentanyl enhancement provision is right there alongside all weight provisions and none of them require mental states. So to read that into this statute would actually require the courts to potentially be reviewing all the weight offenses based on weight and then reevaluating whether, well, we need to read a separate mental state requirement into those. And it would make no sense to do that. All right. Let me switch my focus here a little bit, see how much time I have left. A minute and 46. Okay. Just very briefly here. I wanted to get to some of the other. Okay. So with respect to defense counsel's disclosure about the prior domestic violence during the sentencing argument, that disclosure came in direct response to the court's questions to counsel about defendants prior 22-year prison sentence. So defense counsel is making a sentencing argument and the narrative arc of that argument was that defendant used to be a violent offender. He is no longer committing violent offenses. This was 22 years ago or more. And the sentence was over 20 years. It was an over 20-year prison sentence. The trial court was concerned about that and specifically asked about that. So in response, rather than letting that significant sentence just hang unexplained, counsel reasonably chose to provide context and did explain that there was a domestic violence related offense. But it was not random act of violence against members of the community at large. This underlying stalking conviction could have been viewed as more serious had defendant just been randomly stalking people in the community at large. So although other counsel may have decided not to approach it that way, adding the context of domestic violence, it's contained within the home, it's serious, it's terrible, but he's not stalking members of the community. He's not a risk to the community. It was just an isolated thing with him and his partner. That shows a reasonable strategic choice by counsel to respond directly to the court's concerns about that lengthy sentence. And the overriding concern was to advance that the defendant had stopped with the violent conduct. He had no other commissions of violence following that. So for all these reasons, I'm sorry if I went over on time. If you have any further questions, I'm happy to answer them. Otherwise, I would respectfully ask this court to affirm the judgment below, the sentences below, and that is all I have. Justice Scheller, any questions? No questions. Justice Vaughn? No questions, thank you. Helen, you may proceed with your rebuttal. Thank you, Your Honor. On rebuttal, I would like to address four things that the appellee brought up. One is the weight sentencing differences within Section 401. He's correct. There is no mens rea included in those, and I'm not making an argument that there should be. As I pointed out with the location-based sentencing enhancements being distinguishable, weight is something that a defendant could figure out. A defendant could weigh his product and understand what sentences he could be facing, whereas a defendant cannot as easily figure out that there could be fentanyl in what he's possessing. There's a different level of being able to know that prohibited conduct or that prohibited fact that has to be proven. Also, for those weights, the state would have already proven that the defendant knew that he did possess a controlled substance. That fact is already proven, and courts have it clear that it is important that the state be able to prove that the defendant knew that he had a controlled substance or multiple controlled substances. That is the important fact there. For weights, the state has already proven that the defendant knew that he possessed a controlled substance, and that defendant could figure out the weight. Additionally, it wouldn't have the same legislative history. When we look at the legislative history for combating fentanyl and for this fentanyl enhancement, that legislative history would not be the same as deciding the different weights and what that penalty is going to be from those specific weights. I'd next like to move to the public safety issue. The rise in fentanyl is a public safety issue. However, there was nothing in the legislative history in those discussions to show that it was such an issue that the legislature meant to negate any mens rea and to have it be absolute liability. If we go down that line of thinking that they meant for it to be absolute liability, that means they meant for the possession of straight fentanyl, where it's not mixed, but a defendant possesses only fentanyl, to also be absolute liability. That does not make sense in the body of controlled substance law, where the state has to prove that a defendant knew that they possessed a controlled substance. I don't believe that the dire public safety concerns can show that the legislature meant for this to be an absolute liability enhancement. Next, the discussion on People v. Graves. As I stated before, the First District Appellate Court did not go into any specifics and performance-owned analysis. Therefore, that's why grapes cannot be relied upon, is because it relies upon an analysis from different enhancements. I don't believe that Graves is the end-all of deciding this issue. Finally, as far as the domestic violence disclosure that Defense Council made at the trial, it does make sense. There is a strategic purpose for Defense Council to tell the judge, those were violent offenses. My client is no longer a violent offender. This is a drug case. From the offenses on their face, from the name of the offenses, aggravated stalking and a gun offense, those are obviously more violent. There was no need to tell that it was specifically domestic violence because of how domestic violence is treated in the Illinois courts and legal system, where domestic violence offenses, especially severe penalties, go along with them and are treated very seriously. The violent nature of those convictions could have been evident on the face without getting into that fact. It did prejudice Mr. Bragg when Defense Council brought that up without any purpose. It likely did increase his sentence. Based off of that, I'm asking this court to vacate Mr. Bragg's sentence and remand for resentencing within the unenhanced sentencing range of 4 to 15 years. Any further questions, Justice Schiller? No questions. Justice Vaughn? Questions, thank you. Thank you, counsel, for your arguments. We will take this matter under advisement and issue a ruling in due course.